(Pickaway Co., Common Pleas Court.)

## IN THE MATTER OF THE ASSIGNMENT OF ANNA S. SEARS.

(1). When a person appeals from the decision of the probate court to the common pleas court, under section 6409 of the Revised Statutes, to perfect his appeal, he must file a transcript of the proceedings of the former court with the clerk of the latter court within the time therein prescribed, and it is not the duty of the probate judge to file it.

(2). The filing of the transcript within the time fixed is a jurisdictional fact, and unless it was done, the common pleas court has no jurisdiction.

(3). The statutory requirement that the transcript shall be filed within the time fixed is not directory, but mandatory.

---

Motion to dismiss appeal.

WALTERS, J.

The decision of the probate court being adverse to the assignees, they appealed to this court.

The matter passed upon were claims made by the appellees against the assigned estate. The appellees filed motions here to dismiss the appeal, and it was upon these that the case was submitted.

The contention of the movants is, that the appeal was not perfected in the time required by section 6409 of the Revised Statutes; that is to say, the transcript was not filed with the clerk of this court within the time fixed by the statute.

It is agreed that, if a strict, a literal, compliance with the statute was essential, the transcript should have been filed, on or before September 14th, 1897. The clerk's filemark shows that it was not filed till the 16th day of September, 1897. That was three days after this term of the court began.

(1). The first question, argued by counsel, was, upon whom does the statute impose the duty of filing the transcript?

The appellants insist that it was the duty of the probate judge; while the appellees insist that it was the duty of the appellants. The appellees have the prestige of a decision sustaining their view, rendered by the Circuit Court of Hamilton county. Biddle, Trustee, v. Phipps, 2 C. C. 61.

It is true it is only persuasive authority. It may, also, be true that it was mere obiter dictum. Still the decision is the opinion of a very respectable court upon the mooted question. Its construction was that it is the duty of the person appealing to file the transcript.

After much reflection, I am convinced that this is the only construction of which the statute is susceptible.

If the legislature, by using the words, "person appealing", merely intended to

identify the notice or undertaking, it would have made the words, "by the person appealing," precede the words, "as hereinbefore provided." That was their true rhetorical position. The material part of the statute would then have read, "which shall be filed with the clerk of the court of common pleas, on or before the second day of the term of said court, next after an undertaking or notice is given, by the person appealing, as hereinbefore provided." So transposed, it would have been plain that the words, "person appealing," were merely used to identify the undertaking or notice.

Again, as the statute stands, to construe these words as merely subserving an identifying purpose, would not help the appellants in their contest. That would render the statute silent as to who shall file the transcript; for it cannot be reasonably asserted that the statute, in terms, makes it the duty of the probate judge to file the transcript. It is mere conjecture to affirm that it was his duty. In very explicit terms he is required to "make out" the transcript; but it does not say that he shall file it.

There is just enough' ambiguity and uncertainty in the statute to make the court perform the duty of construing it; but it is more reasonable to solve it by concluding that it was the duty of the person appealing to file the transcript than to infer, to guess, that it was the duty of the probate judge. There would be, at least, much more conjecture and guessing required to reach the latter conclusion than to reach the former conclusion.

My disposition was to construe this statute in favor of the appellants, because it promoted their remedial right; but my judgment and reason barred the way, and they constrained me to conclude that it was their duty to have filed the transcript.

(2.) It was argued by the attorneys for the appellants that, no matter whose duty it was to file the transcript, the statute is merely directory, and that the filing of the transcript on the 16th day of September was a substantial compliance with its terms.

But that argument cannot be adopted. It is contrary to the decisions of the supreme court delivered in cases where analogous statutes were construed.

The course of reasoning, in cases like this, where the appellant was required to file a transcript, or give a bond, was something like this:

An appeal is not a matter of right; it is conferred by statute. It must be taken and perfected within the time designated by the statute.

The provision which limits the time is jurisdictional in its character. The appellate court cannot enlarge the time;

the parties cannot, by agreement, extend it.

When one of the requisites for a perfected appeal is a transcript filed by the appellant, that requirement is imperative, and jurisdictional in its nature.

There is no condition that in case the appellant omits to file it, through inattention, or inadvertence, or negligence, he will be relieved from the consequences. The appellant must be diligent and file the transcript within the time fixed by law, or his appeal will fail.

If the time was fixed by a rule of court, it might be extended; but being prescribed by a statute, the court has no power to relax its provisions. The statute is unbending, requiring implicit obedience from the court as well as its suitors. The court has no power to dispense with obedience to its provisions.

By such a statute the legislature manifests a policy to restrict litigation as far as practicable. Another design is to insure dispatch in the review of the orders and decrees of lower courts, and there is no way to do this, but to adhere strictly to the mandates of the legislature. The cases illustrating these propositions are numerous.

In Ratcliff v. Beck, 10 W. L. Journal, 445, Justice Thurman said: "The party appealing must see that all the pre-requisites of the statute have been complied with. He wishes to appeal; he knows what the conditions are upon which his appeal can be perfected, and he must comply with them at his peril. This court has no power to waive any one of these conditions precedent, without, in effect, repealing pro tanto the statute."

The case reported in 12 C. C. reports, does not cast the faintest ray of light upon this case, because the appeal statute there considered unambiguously required the clerk of the court to file the transcript.

When the failure to mature an appeal is the fault of an officer of either the lower or of the reviewing court, and not of the appellant, a radically different view prevails. Where the loss of time is solely caused by the action or non-action of such an officer, the rule does not apply, because the loss is not imputable to the appellant. In that case it is the wrong of the court; and the rule which does apply is inspired by the maxim, "An act of the court shall prejudice no man." Broom's Legal Maxims, 12, (8 edition).

(3). A third reliance of the appellants against the motion to dismiss is the contention that the transcript was, in fact, filed in time.

Oral and documentary evidence was offered which tended to show that it was so filed. Oral and other evidence was offered by the appellees which tended to corroborate the clerk's file-mark.

The third question, therefore, is, where is the preponderance of the evidence located?

The burden of proof rested upon the appellants. Have they discharged that burden? The only evidence of a persuasive character was that of Miss Hedges, the clerk of the probate court. She swore that on Saturday the 11 day of September, 1897, the clerk of this court brought the case or box containing the papers into her office, and made some inquiries about their numbers.

At first she was quite positive it was before the present term of this court convened. The time was impressed upon her mind by her reference to it to the probate judge; but that gentleman did not corroborate her.

At the last, Miss Hedges impaired her testimony, in some degree, by observing that she thought the conversation with the clerk occurred before this term of court.

This witness's testimony also disclosed that the transcript in this case, and in another case, were prepared about the same time, and probably the transcript in this case was first prepared; that both were prepared and delivered, the one in this case to Grigsby, and in the other to the probate judge, before this term of court began; and the probate judge testified that he delivered the transcript in the other case to the clerk of this court on the 15th day of September. This evidence, just recited, has but a remote, if it has any, bearing upon the main question.

It simply proves that the clerk of the probate court discharged her duty by preparing and delivering the transcripts in time to have enabled them to be filed in the time prescribed by law; and it may be said to have established the probability that, since the transcript in this case, was delivered to the attorney for the appellants before the court began, he may have filed it in time. But, inasmuch as the memory of the attorney is a blank, he being wholly unable to say that he ever filed the transcript, at any time, this probability is very weak.

Against this testimony, there is the evidence of the clerk of this court and his deputy and of his appearance docket. He fixes the conversation with Miss Hedges on Saturday, Sept. 18, 1897.

It is true that, independent of his appearance docket, he had no recollection of when the transcript was filed; but he testified to his habit of docketing cases, and that was that he entered them upon the appearance docket on the same day the transcripts were filed.

The strongest evidence consists of the entries of this case, and of one or two preceding cases, and one succeeding case, in the appearance docket. The disclosure made by the docket is that they were entered in the order in which they would naturally be entered, if the transcripts had been filed just as the clerk claims they were.

The circumstantial evidence made up by their respective locations on the docket, and their order with reference to each other, I regard as strong, almost conclusive, evidence of the truth of the theory that the transcript was not filed until Sept. 16, 1897. It is at least so strong that, when united with the evidence of the clerk and his deputy, it overcomes the evidence offered by the other side.

I must, therefore, conclude that this transcript was not filed in time.

If Mr. Grigsby had testified, with any degree of explicitness, that he delivered the transcript to the clerk, on or before the 14th day of September, I should not have hesitated in drawing a different conclusion. But I do not see how I could be expected to discredit the clerk's file-mark when no one could testify that he even delivered the transcript to the clerk.

I do not hesitate to say that my judgment that these motions shall be sustained is a reluctant one. I would rather decide these cases on their merits.

But the appellees had a right to raise the questions they have by their motions. The court is not armed with power to compel them to waive their objections.

Motion sustained.

Abernethy & Folsom, and Grigsby, for appellants.

Smith & Morris and Smith, for appellees and the movants.

Affirmed by the Circuit Court.